IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-2012-01653-TUC-JGZ (CRP) |
|---|---|
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | |
| Hector E. Maldonado, | |
| Defendant. | |

Pending before the Court is Defendant's Motion to Suppress Evidence. (Doc. 36). The Government responded to the Motion. (Doc. 50). On January 15, 2013, the Magistrate Judge held an evidentiary hearing on the Motion. (Docs. 64, 67). Pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules, the Magistrate Judge now issues this report and recommendation, recommending the Motion be granted.

**Factual Findings**

Defendant Hector Maldonado is charged with possession with intent to distribute marijuana for his alleged involvement in trafficking marijuana near the international border on July 6, 2012. On that day, Border Patrol received a call from a concerned citizen stating that a silver Dodge Neon was involved in suspicious activity around Kino Springs Village in Nogales, Arizona. (Doc. 67, Transcript of Evidentiary Hearing on January 15, 2013 ("TR") at 15). Using a camera, Border Patrol agents identified the

vehicle as it was traveling from South River Road onto Via Frontera. (TR at 18). Dispatch informed nearby agents and Agent Jay Johnson positioned himself at a high point on Ruby Road, anticipating that the Neon would travel onto Ruby Road from Via Frontera. (TR at 17, 19).

The Neon did turn onto Ruby Road and pass by Agent Johnson's marked Border Patrol vehicle. (TR at 19). Agent Johnson observed a white Chevrolet Lumina traveling closely behind the Neon. (TR at 19). After the vehicles passed his location, Agent Johnson pulled behind the vehicles and followed them a short distance to the Pilot Travel Center. (TR at 21). At that point, the Neon, which was the lead car, pulled into the Pilot Travel Center and the Lumina continued along Ruby Road toward Interstate 19. (TR at 25). Agent Johnson followed the Neon into the Pilot Travel Center, continued to follow it through a Wendy's fast food drive-thru and then parked behind the Neon after it pulled into a parking spot and parked. (TR at 26-27).

Defendant was a back seat passenger in the Neon. (TR at 31). Agent Johnson approached the Neon, interviewed the occupants and eventually searched Defendant's phone. (TR at 30, 31, 50). The phone contained evidence linking Defendant to the Lumina. During the stop, Agent Johnson learned that other agents had discovered a large quantity of marijuana in the Lumina. (TR at 31). In the Motion, Defendant seeks suppression of the evidence discovered in Defendant's phone.

**Credibility of Witness at Evidentiary Hearing**

Agent Johnson was the only person to testify at the evidentiary hearing conducted by the Magistrate Judge. A number of inconsistencies in Agent Johnson's testimony weaken the credibility of his recollection of this incident. The Magistrate Judge considers many factors when determining a witness's credibility. As outlined by the Ninth Circuit's model jury instructions, the following factors are considered in weighing the credibility of a witness:

1. The witness's opportunity and ability to see or hear or know the things testified to;

2. The witness's memory;
3. The witness's manner while testifying;
4. The witness's interest in the outcome of the case, if any;
5. The witness's bias or prejudice, if any;
6. Whether other evidence contradicted the witness's testimony;
7. The reasonableness of the witness's testimony in light of all the evidence; and
8. Any other factors that bear on believability.

FedCrim-JI9C 1.7 Credibility of Witnesses. As the Magistrate Judge will discuss in detail below, Agent Johnson was an unreliable witness. His memory of the incident was inconsistent across direct, cross, and redirect and his testimony added details to the incident that he failed to note in his report of the incident. A district court is required to conduct its own *de novo* evidentiary hearing if it rejects the credibility finding of the magistrate judge. *United States v. Ridgway*, 300 F.3d 1153, 1157 (9th Cir.2002).

Agent Johnson was not well-prepared for the evidentiary hearing and had inconsistent recollection of the facts. The stop at issue occurred at the Pilot Travel Center on the east side of Interstate 19. (TR at 13). Agent Johnson drew a map in which he placed the Pilot Travel Center and the roads connected to the Pilot Travel Center on the wrong side of Interstate 19. (TR at 13). He also initially described the Neon as red in color when it was silver. (TR at 14).

This stop originated with a concerned citizen calling in suspicious activity involving the Neon. During the evidentiary hearing, Agent Johnson provided conflicting testimony on the detail of information he had gathered from the call. On direct examination, Agent Johnson stated there was no detailed information about the suspicious activity. (TR at 36). Agent Johnson referred to his report of the incident and testified that he had no facts about the type of suspicious activity in which the Neon was suspected of being involved. (TR at 36, 57). In conflict with his direct testimony, on redirect, Agent Johnson said that dispatch had informed him the suspicious activity involved "illegal aliens or, you know, subjects coming towards that vehicle." (TR at 56).

If Agent Johnson had more information about the suspicious activity, the Magistrate Judge would have anticipated Agent Johnson noting that detail in his report

and discussing it in his direct examination. Agent Johnson's explanation for not including that information in his report was that "it's a very vague description." (TR at 57). That Agent Johnson recalled the greater detail about the suspicious activity only when prodded on redirect weakens his credibility.

Further weakening his credibility was Agent Johnson's recollection of where he parked his vehicle in relationship to the Neon. The Magistrate Judge notes that one of the issues in the Motion is whether Agent Johnson approached Defendant's vehicle as a voluntary encounter or whether it was a stop requiring reasonable suspicion. One critical factor in determining the nature of the stop is whether Defendant felt he could leave the situation; was the Neon blocked from leaving its parking spot.

On direct examination, Agent Johnson testified that when the Neon pulled into a parking spot after going through the Wendy's drive-thru, he parked "beside them." (TR at 27, 48). When asked if he parked behind the Neon, he said "I may have caught a piece of their back end … But I did not totally block them in. I parked pretty much adjacent to them, maybe a little bit of the front – my front end on the rear of their vehicle." (TR at 28). When asked to clarify if his vehicle was touching the Neon, Agent Johnson said "No. And like I said, they're parked like this and I was adjacent to them. I wasn't immediately behind them." (TR at 28). In his report of the incident, Agent Johnson noted that he parked behind the Neon. (TR at 33).

When asked on cross-examination whether he wanted to make any changes to the report he completed after the incident, Agent Johnson stated "In my report I said I pulled behind the silver Neon and it was a poor choice of words. I would say adjacent would have been a more accurate—" (TR at 33). He agreed he had not made any corrections to his report subsequent to writing it. (TR at 33). Later in cross-examination, Agent Johnson agreed that he parked behind the Neon. (TR at 47).

Also weakening Agent Johnson's testimony was his inconsistent recollection of when other agents arrived on the scene in relationship to when he approached the Neon to speak with the occupants. On direct, Agent Johnson said that after he parked, he got out

- 4 -

of his vehicle and approached the three occupants in the Neon. (TR at 28). On cross-examination, Agent Johnson testified that he waited for backup before approaching the occupants of the Neon. (TR at 50). Agent Johnson stated he would not approach a vehicle with three occupants without having assistance because "—three people, I'm one guy, you never know." (TR at 50). He also recalled asking one of the two agents assisting in backup to collect the information on the identifications of the three occupants. (TR at 52). On redirect, Agent Johnson changed his recollection of the timing and testified that he made initial contact with the occupants of the Neon and talked with them for a minute and a half to three minutes before backup arrived. (TR at 57). When pushed further, he said he could not recall the exact timing but that he had started questioning the occupants before backup agents arrived. (TR at 58).

These inconsistencies in the recollection of important facts as well as Agent Johnson's apparent lack of preparation for the hearing caused the Magistrate Judge to find Agent Johnson's testimony less than reliable or credible.

**Voluntary Encounter**

In its Response to the Motion, the Government argued, in part, that the encounter between Agent Johnson and the occupants of the Neon was voluntary and did not require reasonable suspicion. (Doc. 50, pp. 2-3). Not all police-citizen contacts are subject to Fourth Amendment restrictions. *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (citing *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968). A person is seized if "taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Bostick*, 501 U.S. at 437 (internal quotation marks omitted); *see also United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (holding that an encounter is a seizure if "a reasonable person would have believed that he was not free to leave").

In determining whether a person is seized, courts consider (1) the number of officers; (2) whether weapons were displayed; (3) whether the encounter occurred in a

- 5 -

public or non-public setting; (4) whether the officer's tone or manner was authoritative, so as to imply that compliance would be compelled; and (5) whether the officers informed the person of his right to terminate the encounter. *United States v. Washington*, 387 F.3d 1060, 1068 (9th Cir.2004) (internal citation omitted). An officer approaching a person in a parked car in a public place does not necessarily convert a voluntary encounter into a stop. *United States v. Kim*, 25 F.3d 1426, 1430 (9th Cir.1994).

In a Ninth Circuit appeal, the Court concluded no investigatory stop occurred in an initial encounter when a uniformed officer approached a defendant in a stopped car to question the defendant. *United States v. Washington*, 490 F.3d 765, 770 (9th Cir.2007). The uniformed police officer stopped his car a full car length behind the defendant's parked car and approached the defendant on foot to ask him some brief questions. The officer did not activate his sirens or lights and did not brandish a weapon. The Ninth Circuit affirmed the district court's conclusion that "a reasonable person would have felt free to terminate the encounter and leave." *Id*.

The Magistrate Judge concludes the facts of this case would not leave a reasonable person feeling free to terminate the encounter. Agent Johnson followed the Neon into the Pilot Travel Center and continued to follow it through the Wendy's drive-thru. When the Neon pulled into a parking spot and parked, Agent Johnson pulled behind the Neon and parked his marked Border Patrol vehicle. Agent Johnson's testimony that he just "caught a piece of [the Neon's] back end … but I did not totally block them in" is not credible and is contradicted by his report as well as portions of his testimony at the evidentiary hearing. (TR at 28, 33, 47). Agent Johnson also acknowledged that a curb was in front of the Neon. (TR at 49). Further, Agent Johnson testified that he activated his emergency overhead lights when he parked behind the Neon. (TR at 27, 48). Whether he activated those lights because he was initiating a stop or he activating them, as he suggested in testimony, for officer safety in a parking lot in broad daylight, is of no consequence. (TR at 27, 44). A reasonable person would have not felt free to leave with a marked Border Patrol vehicle and a curb blocking the person in and emergency lights activated after

having been followed by the Border Patrol vehicle through a drive-thru. Also weighing against a voluntary encounter is the quick arrival of backup officers in another marked Border Patrol vehicle that also may have parked behind the Neon as Agent Johnson testified it parked next to his vehicle. The encounter was not voluntary; it was a stop.

**Reasonable Suspicion**

The Fourth Amendment protects the right of the people to be secure in their person, houses, papers, and effects against unreasonable searches and seizures. *United States v. Hensley,* 469 U.S. 221, 226 (1985). In *Terry v. Ohio,* 392 U.S. 1, 88 (1968), the Supreme Court held that, consistent with the Fourth Amendment, police may stop persons in the absence of probable cause under limited circumstances. The Court has held that law enforcement agents may briefly stop a moving automobile to investigate a reasonable suspicion that its occupants are involved in criminal activity. *Hensley,* 469 U.S. at 226.

Reasonable suspicion exists when an officer is aware of specific articulable facts, that, together with rational inferences drawn from them, reasonably warrant a suspicion that the person to be detained has committed or is about to commit a crime. *United States v. Cortez,* 449 U.S. 411, 416-18 (1981). When assessing the reasonableness of the police officer's actions, the court must consider the totality of the circumstances which confronted the officer at the time of the stop. *United States v. Sokolow,* 490 U.S. 1, 8 (1989). The articulable facts forming the basis of a reasonable suspicion must be measured against an objective reasonableness standard, not by the subjective impressions of a particular officer. *Gonzalez-Rivera v. INS,* 22 F.3d 1441, 1445 (9th Cir.1994).

The Government bears the burden of proving by a preponderance of the evidence that the warrantless search or seizure did not violate the Fourth Amendment. *See United States v. Matlock*, 415 U.S. 164, 177 n. 14 (1974) (noting that "the controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence"). The Government satisfies its "burden of production by coming forward with 'specific and articulable facts,' *Terry v. Ohio*, 392 U.S. 1, 21 (1968)

to support [an officer's] suspicion of illegal activity." *United States v. Willis*, 431 F.3d 709, 715 n. 5 (9th Cir.2005). Defendant has the burden of proof on a motion to suppress, and as such must "introduce contrary evidence or get the officer to retract his testimony on cross-examination." *Id*.

The Government contends Agent Johnson had reasonable suspicion to stop the Neon because the Kino Springs Village area as well as the roads the Neon travelled are known for alien and drug trafficking; the call about suspicious activity focused on a silver Dodge Neon; the Neon appeared to be traveling with the Lumina in tandem; and the Lumina appeared "heavily laden" and had a temporary license tag.

The Magistrate Judge finds that not all of this evidence is credible as presented through the inconsistent testimony of Agent Johnson and when viewed in totality, the credible circumstances do not support reasonable suspicion.

Agent Johnson testified that the area in which Defendant's vehicle was stopped is a known alien and drug trafficking route and that he has personal experience interdicting this criminal activity in this area. This factor alone is insufficient to establish reasonable suspicion and will be considered with the other evidence. *United States v. Sigmond-Ballesteros*, 285 F.3d 1117, 1124 (9th Cir.2002). The concerned citizen call provides some but not much suspicion because it lacked detail. *Alabama v. White*, 496 U.S. 325, 329 (1990). No evidence was presented about the identity of the caller and whether or why that caller was particularly reliable. Further, no evidence was presented as to how the caller came to believe there was suspicious activity involving the Neon. Finally, no evidence was provided that allowed Border Patrol to predict future suspicious activity of the Neon. In fact, Border Patrol could not initially determine where the Neon was traveling as agents anticipated it would use Highway 82 but then were unable to find it on that road. (TR at 15).

Because the silver Neon was observed by a Border Patrol camera and later visualized by Agent Johnson, there is corroboration that this silver Neon is the one identified by the concerned citizen but the tip provides basically no information about the

alleged suspicious activity. Agent Johnson's attempt to elaborate on the information provided in the tip was not credible testimony. In his report he described the tip as suspicious activity. This was also how he described the tip during direct examination. His later elaborations on redirect failed to provide useful information and reduced the credibility of his testimony.

Agent Johnson's credibility becomes critical when considering whether he is reliable in testifying that the Lumina was "heavily laden" and the Neon and Lumina were traveling "in tandem." The Magistrate Judge gives little weight to either of these alleged facts because Agent Johnson did not testify credibly and the other evidence does not corroborate his testimony.

Agent Johnson testified that as he followed the Lumina and Neon the short distance to the Pilot Travel Center, the Lumina appeared to be "heavily laden." (TR at 24). He did not describe how the vehicle looked that made him think it was heavily laden; rather, he said it was "just a little lower than it should have been based on what I had seen." (TR at 24). He also agreed that the vehicle was not dragging. (TR at 24). There was no testimony about, for instance, the trunk riding lower than the front of the Lumina or the car sitting low on the tires, or any other physical description of the car that would corroborate the unsupported statement that the vehicle was "heavily laden." On cross-examination, Agent Johnson acknowledged that he did not describe the Lumina as "heavily laden" in his report of the incident. (TR at 55). Given the other inconsistencies in Agent Johnson's testimony and his failure to provide any descriptive detail to support his statement, the Magistrate Judge gives no weight to this fact.

Agent Johnson's description of the Neon and Lumina driving "in tandem" is also problematic. The Ninth Circuit has held that driving in tandem must be based on more than the "briefest of observations." *United States v. Robert L.*, 874 F.2d 701, 704 (9th Cir.1989) (following three vehicles for approximately one kilometer not sufficient to constitute driving in tandem), overruled on other grounds in *United States v. Santamaria-Hernandez*, 968 F.2d 980 (9th Cir.1992). Cases in which courts have found driving in

tandem to be a factor supporting reasonable suspicion, the driving in tandem is significant and detailed. *See United States v. Medina-Gasca*, 739 F.2d 1451, 1453 (9th Cir.1984) (extended observation of three vehicles traveling close together, parking bumper-to-bumper, and later traveling once again in tandem); *United States v. Saenz*, 578 F.2d 643, 646-647 (5th Cir.1978) (cars observed traveling together for 70 miles), *cert. denied*, 439 U.S. 1075 (1979); *United States v. Villarreal*, 565 F.2d 932, 936 (5th Cir.1978) (driving in tandem for approximately an hour), *cert. denied*, 439 U.S. 824 (1978).

Agent Johnson observed the Neon when it turned onto Ruby Road. (TR at 19). He also observed the Lumina "immediately behind" the Neon. (TR at 19). Agent Johnson described the distance between the Neon and Lumina as less than a car length. (TR at 20). The vehicles appeared to be going the speed limit of 35 mph until they saw Agent Johnson's vehicle and slowed down. (TR at 20-21). Agent Johnson did not observe the "tandem driving" for more than four minutes. (TR at 21). Half of that time was after Agent Johnson pulled behind the vehicles and both vehicles significantly reduced their speed. The fact that two vehicles reduce their speed when they pass a law enforcement vehicle and that law enforcement vehicle pulls onto the road directly behind them is not, by itself, particularly suspicious. The Magistrate Judge gives some weight but not great weight to these two vehicles appearing to travel in tandem. Agent Johnson only observed these vehicles for a short distance, half of which he was traveling behind them.

Finally, the temporary license tag on the Lumina bears little weight to the analysis. Agent Johnson did not run a check on this tag and he initiated a stop of the Neon before it was discovered that the Lumina was carrying marijuana. (TR at 56).

Considering the totality of the circumstances, Agent Johnson did not have the articulable facts to believe the occupants of the Neon were engaged in criminal activity.

**Recommendation**

The Magistrate Judge recommends the Motion to Suppress be GRANTED. (Doc. 36). Pursuant to Federal Rule of Criminal Procedure 59(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of the Report and

Recommendation. If objections are not timely filed, they may be deemed waived. Responses to objections are permissible. No replies will be permitted without leave of the District Court. The parties are advised that any objections filed are to be identified with the following case number: **cr-12-1653-JGZ**.

Dated this 30th day of January, 2013.

*Charles R Pyle*

CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE