WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 12-01653-TUC-JGZ (CRP) |
| Plaintiff, | **ORDER** |
| vs. | |
| Hector E. Maldonado, | |
| Defendant. | |

On January 30, 2013, Magistrate Judge Charles R. Pyle filed a Report recommending that this Court grant Defendant's Motion to Suppress. (Doc. 71.) In the Report, Judge Pyle concluded: (1) the detention of Defendant's vehicle was not consensual, and (2) agents lacked reasonable suspicion to stop the vehicle. The Government has objected to the Report and Recommendation. (Doc. 73.) The Government concedes that the stop of the vehicle was not consensual, but argues that it was nonetheless lawful. The Government asserts that the Magistrate Judge erred in concluding that the testifying agent was not credible and, that if found credible, the totality of the evidence supports the legality of the stop. The Government requests that the Court conduct a *de novo* evidentiary hearing on the issue of the agent's credibility and receive further evidence to confirm the agent's testimony.

**I. STANDARD OF REVIEW**

The Court reviews *de novo* the objected-to portions of a Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).   The Court reviews for clear error the

unobjected-to portions of the Report and Recommendation. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *see also Conley v. Crabtree*, 14 F. Supp. 2d 1203, 1204 (D. Or. 1998). The Court must conduct a *de novo* evidentiary hearing if it rejects the credibility finding of the magistrate judge. *United States v. Ridgway*, 300 F.3d 1153, 1157 (9th Cir. 2002).

## II. DISCUSSION

The Fourth Amendment prohibits "unreasonable searches and seizures" by the Government, and its protections extend to brief investigatory stops that fall short of traditional arrest. *See Terry v. Ohio*, 392 U.S. 1, 9 (1968). The Fourth Amendment's prohibition against unreasonable searches and seizures applies to investigatory traffic stops. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). To justify an investigative stop, a police officer must have reasonable suspicion that a suspect is involved in criminal activity. *United States v. Miranda-Guerena*, 445 F.3d 1233, 1236 (9th Cir. 2006).

In making a reasonable suspicion determination, the court looks to the totality of the circumstances to evaluate whether the detaining officer had a "particularized and objective basis" for suspecting legal wrongdoing. *Arvizu,* 534 U.S. at 273. The totality of the circumstances takes into account all of the events that transpire up to the moment before the defendant is seized. *United States v. Santamaria-Hernandez*, 968 F.2d 980, 983 (9th Cir. 1992). Officers' reasonable suspicion may be informed by the officers' own experience and specialized training; officers may make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." *Id*. "Any number of factors may be taken into account in deciding whether there is reasonable suspicion to stop a car in the border area." *United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975). "Officers may consider the characteristics of the area in which they encounter a vehicle. Its proximity to the border, the usual patterns of traffic on the particular road, and previous experience with alien traffic are all relevant." *Id*. at 884-885 (citations omitted). "Aspects of the vehicle itself may justify suspicion." *Id*. Further, an informant's tip can provide a basis for a finding of reasonable suspicion if the tip is reliable. *See United States v. Rowland*,

464 F.3d 899, 907-08 (9th Cir. 2006). A tip is considered more reliable if the informant is known, the informant has a proven track record, and/or the information provided is predicative of future events that are corroborated by law enforcement. *Id.* The government bears the burden of proving by a preponderance of the evidence that the stop of the a defendant's vehicle did not violate the Fourth Amendment. *See United States v. Matlock*, 415 U.S. 164, 177 n. 14 (1974).

In this case, Agent Johnson, the only witness at the suppression hearing, testified that a concerned citizen called the United States Border Patrol to report that he/ she had seen a silver Dodge Neon around Kino Springs Village, and that the Neon "had loaded with illegal aliens." Kino Springs is near Nogales, Arizona. Agents were initially unable to locate a silver Neon. They first looked for a silver Neon on the east side of town and on Highway 82. Then they began to look on the west side of town, the west side of I-19; a radio camera operator spotted a silver Neon traveling on South River Road. South River Road is close to the international border and is commonly used for drug and alien smuggling. It is also a route commonly used by local residents traveling to Nogales.

The camera operator reported that the silver Neon exited River Road onto Via Frontera. Agent Johnson positioned his vehicle, at a high location, off of Ruby Road, a little east of the Pilot Travel Center, where he could see down into the area where Via Frontera intersects with Ruby Road. Agent Johnson saw the Pilot turn off of Via Frontera and onto Ruby Road. When the Neon approached Agent Johnson's location, he observed that it was being closely followed (less than one car length) by a white Chevrolet Lumina. He suspected the cars were driving in tandem. Agent Johnson waited for the two cars to pass him and he pulled his marked vehicle onto the roadway immediately behind them. The two cars appeared to slow upon Agent Johnson's entry onto the roadway. He observed that the Lumina had a temporary license plate and appeared "heavily laden." Agent Johnson testified that smugglers use temporary license plates to hide their identities and other things

1 because the state is lax when it comes to temporary plates.[1]  As far as the Lumina being
2 heavily laden, he acknowledged that the vehicle "wasn't dragging"; "it was just a little lower
3 than it should have been based on what I had seen go by me."  The agent followed the Neon
4 when it turned off the road into the Pilot Travel Center.  Agent Johnson testified that it takes
5 approximately two minutes to drive from the intersection of Via Frontera and Ruby Road
6 to the Pilot Travel Center.  The Lumina continued its travel on Via Frontera towards I-19.
7 Agent Johnson followed the Neon through a fast food drive thru in the Pilot Travel Center
8 and stopped the vehicle, by pulling behind it with his lights activated.  Defendant was a
9 passenger in the Neon.

10     The Court finds that all of the facts, considered in their totality, are insufficient to
11 support a finding of reasonable suspicion to stop the Neon.  Agent Johnson had very little
12 information from which to establish reasonable suspicion to stop the Dodge Neon. The tip
13 from the concerned citizen contained little information.  It was uncorroborated and lacked
14 reliability and specificity.  The source of the tip and that source's reliability were unknown;
15 the tip did not provide any detailed predictive information about future events; the tip did not
16 include any information about a Lumina; police observation corroborated nothing except,
17 after looking in numerous areas, the existence of one silver Dodge Neon on South River
18 Road; and nothing about the Neon suggested it "had loaded with aliens."  In fact, the
19 Government conceded at argument that the information provided by the concerned citizen
20 was "not a great tip."  Given that the tip pertained to a Neon loading up aliens, and Agent
21 Johnson observed nothing that would confirm that the Neon was loaded with aliens, the tip
22 in this case had limited, if any, value.

23     The facts most favorable to the Government are Agent Johnson's observations that
24 the Neon was being followed in close proximity by a second car, the Lumina, and that the
25 Lumina appeared to be riding low.  However, Agent Johnson had a limited opportunity to

---

[1] Despite having heard numerous law enforcement officers testify that smugglers often use recently registered vehicles, the Court has never before heard the explanation that smugglers use temporary plates because lax state registration laws allow them to hide their true identities.

observe the two vehicles.  In following up on the tip, he testified that he only saw the Lumina following the Neon for, at most, two minutes; this is a very brief period of time and, as noted above, the tip had made no mention of a Lumina.  *See United States v. Robert L.*, 874 F.2d 701, 704 (9th Cir. 1989) (following three vehicles for approximately one kilometer not sufficient to constitute driving in tandem), *overruled on other grounds* in *United States v. Santamaria-Hernandez*, 968 F.2d 980 (9th Cir. 1992).  Moreover, as far as the vehicle riding low, Agent Johnson testified that the Lumina was riding "just a little low."  And, significantly, he failed to include this important fact in his report.  At the hearing Agent Johnson conceded that this undocumented fact was critical to the reasonable suspicion analysis.  Notably, Agent Johnson stopped the Neon before other officers stopped the Lumina.  Thus, he was not aware at the time he stopped the Neon that marijuana had been found in the Lumina.

The temporary license plate of the Lumina and the location of the vehicles' travel do not tip the totality analysis in the Government's favor.  All vehicles have a temporary license plate at some time; this is not a characteristic unique to smuggling vehicles.  Moreover, as Agent Johnson conceded, the road on which the Neon traveled was known to be used for both legitimate and illegitimate purposes.  Thus,  the Court concludes that the Government failed to prove by a preponderance of the evidence that Agent Johnson had reasonable suspicion to stop the Neon.  In sum, Agent Johnson's decision to stop the Neon was based on factors too common to support a finding of reasonable suspicion of criminal activity.  *See United States v. Sigmond-Ballesteros*, 285 F.3d 1117, 1121 (9th Cir. 2002) (reasonable suspicion cannot rely solely on generalizations that, if accepted, cast suspicion on large segments or entire categories of the law abiding population).

The Court will also deny the Government's requests for a *de novo* evidentiary hearing to challenge the credibility finding of the Magistrate Judge. The Court concludes that regardless of whether Agent Johnson's testimony is credible, his testimony is insufficient to establish reasonable suspicion that the Neon was involved in criminal activity.  Therefore,

further evidentiary hearings focused on demonstrating the truth of Agent Johnson's testimony would not change this result.

### III. CONCLUSION

Accordingly, IT IS HEREBY ORDERED as follows:

(1) United States Magistrate Judge Pyle's Report and Recommendation (Doc. 71) is ACCEPTED AND ADOPTED.

(2) Defendant's Motion to Suppress (Doc. 36) is GRANTED.

Dated this 18th day of March, 2013.

*Jennifer G. Zipps*
United States District Judge